IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ELIAS QUINTANA,

    Plaintiff,

v.                                                                          Case No. CIV-19-066-JWB

CITY OF MUSKOGEE, a political
subdivision of the State of Oklahoma,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on the following motions by Plaintiff: motions to amend (Doc. 184, 196), motions in limine (Docs. 185, 188), motion for summary judgment (Doc. 195), and motion to vacate order (Doc. 241); and the following motions by Defendant City of Muskogee: motion in limine (Doc. 189), *Daubert* motion to exclude (Doc. 190), motion for summary judgment (Doc. 194), and motion to strike (Doc. 228). The motions are fully briefed or the time for filing further briefs has expired, making the motions ripe for decision. (Docs. 199-204, 206, 210, 211, 215, 229, 233, 236, 244, 245). For the reasons stated herein, the City's motion for summary judgment is GRANTED; all other pending motions are DENIED.

**I. Facts**

Plaintiff and the City have each filed a motion for summary judgment. The court finds the following facts to be uncontroverted for purposes of summary judgment. At the outset, the court notes Plaintiff has failed to comply with the Federal Rules of Civil Procedure and the local rules of this court with respect to summary judgment briefing, making a compilation of the material facts difficult. Plaintiff has failed to set forth a concise statement of facts, failed to show that

various factual assertions are based on personal knowledge, failed to support factual assertions with proper citations to the record, and failed to specifically controvert the City's statement of facts. *See* Fed. R. Civ. P. 56; Local Rule 56.1.

Plaintiff is the owner of a 15-unit apartment complex called Cherokee Apartments in Muskogee, Oklahoma. On June 20, 2018, a fire at the apartments was caused by someone throwing a Molotov cocktail into one of the units. Muskogee Fire Marshal Derrell Jones was dispatched to the scene and inspected the premises. He observed what he considered to be significant fire damage, with the point of origin of the fire being within an apartment that sustained extensive damage. (Doc. 194-1.) At some point an electrician from Renfro Electric, Inc. removed several circuit breakers from an electrical panel in an attempt to cut electricity to the affected apartments. Jones called Dan Hurd, the City of Muskogee Building Inspector and explained what he had observed and heard. Hurd testified that among other things, Jones told him of damage to the wiring from the fire and that they had trouble locating and identifying the correct circuit breakers to the apartments, with the result that disconnecting the electrical meter was the only sure means of disconnecting the electricity to damaged areas. (Doc. 195-2 at 7.) Hurd told Jones that for life and safety reasons, it would be necessary to discontinue electrical service to the apartments, and he directed Jones to have the Oklahoma Gas & Electric ("OG&E") representative at the scene remove the electric meter. (Docs. 194-1, 194-2.) Jones conveyed that message to the OG&E representative, who removed the meter.

According to Plaintiff, he met with Hurd and City Electrical Inspector Jeff Strickland at the apartments on June 21, 2018, concerning what needed to be done to reinstall the electric meter. Hurd allegedly said there was a danger of electrical arcing and said he would inform Renfro Electric, Inc., about the electrical issues and Renfro could give Plaintiff an estimate on making

2

repairs. (Doc. 119 at 9.) Plaintiff contends that when he spoke to a Renfro manager, the manager told him it would cost $15,000 "for a new higher power meter" and that separate electrical panels had to be installed in each unit at a total cost of $60,000. (*Id.*)

Hurd sent Quintana a letter dated June 21, 2018, advising him that, "'[p]er our conversation the morning of 6/21/2018," the apartments were "unfit for habitation until water, electric and Gas services are reestablished." Doc. No. 195-1 at 1. The letter informed Plaintiff his tenants could retrieve their personal effects during certain hours but that no one should be in the units from dark to daylight. The letter was silent as to any appeal or hearing rights. It stated that "[i]f we can be of any help during this trying time please free to contact Dan Hurd Building Official for the City of Muskogee," and gave Hurd's phone number. *Id.*

According to Plaintiff, more than a month after the fire Hurd discussed in detail with Plaintiff what he needed to do before his meter could be reinstalled, telling Plaintiff he needed a higher capacity service and a separate electrical panel in each apartment. (Doc. 119 at 11.) Plaintiff disputed that these items were required and had Richard Flores, a friend of Plaintiff's in New Mexico with an engineering background, submit a written report to Hurd and Strickland challenging the need for such modifications, but they asserted that Flores was not familiar with local codes. (*Id.*)

Plaintiff contends that "[a]bout 90 days after the fire" Hurd provided Plaintiff with written notice of specific alleged code violations. ((Doc. 119 at 13.) Plaintiff further alleges that in October 2018 he was advised by the City that he could appeal Hurd's decision to the City's Code Appeals Board. (*Id.* at 14.) An appeal was requested by Plaintiff and a hearing was held on November 27, 2018. The Appeals Board held that the meter could be reinstalled if fire separation were installed between apartment units and fire extinguishers and smoke detectors were installed.

The Board did not find that a larger service or separate panels had to be installed. Plaintiff never took the steps required by the Board for reinstallation of the electric meter. (Doc. 194-5 at 8.) Plaintiff testified he did not do so because what the board wanted was "in violation of the code," and the board "didn't understand the code and the … proper interpretation thereof." (Doc. 194-5 at 8.) According to Plaintiff, Flores and "a couple of friends" told him he would be in violation of the code if he made the repairs the board wanted him to make. (*Id.* at 9.)

The City of Muskogee has adopted the International Building Code. Doc. 194-2; *see also* Muskogee, Oklahoma – Code of Ordinances Section 18-179. The International Building Code ("IBC") provides in part:

> The legal occupancy of any building existing on the date of adoption of this code shall be permitted to continue without change, except as otherwise provided in this Code, the International Fire Code or the International Property Maintenance Code, or as is deemed necessary by the building official for the general safety and welfare of the occupants and the public.

IBC § 102.6.2 (2015)[1]; *see also* Doc. 194-2. The City of Muskogee has also adopted the 2006 edition of the International Property Maintenance Code "IPMC"). Muskogee, Oklahoma – Code of Ordinances Section 18-184.[2]

The IPMC provides in part that "the code official" shall enforce the provisions of the code and shall have authority as necessary in the interests of public health, safety, and welfare to adopt and promulgate rules and procedures. IPMC § 104.2 (2006). The code official is the official

---

[1] Plaintiff contends Section 102.6.2 of the IBC does not apply to his apartment building. *See* Doc. 225-2 at ¶ 5 ("the IBC only applies to "New Construction" or "Extensive Remodeling" of Commercial Properties . . . ."). The court disagrees, the IBC provides "[t]he provisions of this code shall apply to the . . . use and occupancy, . . . [and] maintenance . . . of every building or structure or any appurtenances connected or attached to such buildings or structures." IBC § 101.2 (2015). The IBC does exempt "detached one- and two-family dwellings and multiple single-family dwellings (townhouses)." *Id*. However, the apartment building at issue is not a detached one- or two-family dwelling or a townhouse.

[2] The court takes judicial notice of this fact. Fed. R. Evid. 201; *Stuart v. City of Custer City*, No. CIV-18-471, 2018 WL 5260047, at *4 n.10 (W.D. Okla. Oct. 22, 2018) (quoting *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir. 1997) ("It is 'entirely appropriate' for the court to take judicial notice of the provisions of the town ordinances.").

charged with administration and enforcement of the code, or any duly authorized representative. IPMC § 202 (2006). Hurd was the City of Muskogee's designated code official. Doc. 194-2. Under the IPMC, the code official was authorized to issue a notice of violation or order in accordance with the code, and any person who failed to comply could be prosecuted criminally or civilly. The IPMC provided that when the code official has grounds to believe a violation has occurred, notice shall be given as provided in the code. The notice was supposed to be in writing, include a statement of the violation, include a correction order allowing a reasonable time to make repairs, and inform the property owner of the right to appeal. IPMC § 107.2 (2006). The IPMC provides that any person affected by a decision of the code official has the right to appeal to the board of appeals, provided a written application is filed within 20 days after the decision, notice, or order was served. IPMC § 111.1 (2006). The board may affirm, modify, or reverse the decision of the code official. Any person shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law by the board. IPMC § 111.2-7 (2006).

The IPMC gives the code official emergency powers that allow him or her to require occupants to vacate the premises when, in the opinion of the code official, there is actual or potential danger to occupants because of defective or dangerous equipment (elsewhere defined to include electrical wiring within the structure). IPMC § 109.1 (2006). The IPMC further provides in part:

> Notwithstanding other provisions of this code, whenever, in the opinion of the code official, there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the code official deems necessary to meet such emergency.

IPMC § 109.2 (2006). The emergency provisions also state that any person affected by such an order "shall thereafter, upon petition directed to the appeals board, be afforded a hearing as described in this code." IPMC § 109.6 (2006).

Plaintiff filed this instant action on February 22, 2019. (Doc. 1.)

Robert Lane, Chief Electrical Inspector for the City of Oklahoma City, was retained by the City as an expert by the City to inspect the Cherokee Apartments. He examined the apartments on September 27, 2019. According to him, his examination showed "considerable fire damage which resulted in possible damage to electrical cables which run the entire length of the apartments." (Doc. 194-3 at 1.) The location of the fire also showed "heat damaged cables in the form of partial melting/hardening of the sheaths that encompass the conductors." (*Id.*) Lane opined that Hurd was correct in removing the electrical meter based on life safety issues present in the apartments from either the fire or from violations of the National Electrical Code. (*Id.*)

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically

stored, information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence … of a genuine dispute"; or by "showing that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317. Also, the court will only consider facts based on personal knowledge or supported by exhibits. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

#### A. Procedural Due Process

Plaintiff contends the City terminated electrical service to his building without due process of law because service was discontinued without a pre-deprivation hearing and without providing proper notice and a prompt hearing after the termination of services. Doc. No. 119 at ¶ 142(B).

On a claim for denial of procedural due process, the court engages in a two-step inquiry that first asks whether the City's actions deprived Plaintiff of a constitutionally protected property interest. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308–09 (10th Cir. 2018). If Plaintiff can satisfy this requirement, the court considers whether Plaintiff was afforded the appropriate level of process. *Id.* "In so doing, we note the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 1309 (quoting *Pater v. City of Casper*, 646 F.3d 1290, 1298 (10th Cir. 2011)).

Plaintiff's assertion that he was deprived of a constitutionally protected property interest is conclusory and does not address the fact that Hurd was authorized by law to terminate occupancy of a building if it was "deemed necessary by the building official for the general safety and welfare of the occupants and the public." IBC § 102.6.2 (2015). But even assuming Plaintiff can make a showing that he was deprived of a property interest, the uncontroverted facts show he was provided all of the process that was due under the circumstances.

The Supreme Court has stated "due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Mining & Recl. Ass'n*, 452 U.S. 264, 299 (1981). But the Court has recognized "that summary administrative action may be justified in emergency situations." *Id.* Specifically, the Supreme Court has found that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Id.* at 300. "Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action." *Id.* (internal citations and quotations omitted). Here, the City contends the fire damaged the electrical wiring and rendered the building unsafe, such that Hurd was authorized by the IBC and the IPMC to remove the occupants and terminate the electrical service in order to protect the general safety and welfare of the occupants. Doc. No. 194-2. The City has cited a basis for that decision in the form of photographs and affidavits of individuals who observed the building and participated in the decision-making process. Doc. Nos. 194-1 – 194-4. Plaintiff admits the photographs are an accurate depiction of the apartment after the fire. Doc. No. 194-5 at 37:19-38:12.

Plaintiff disputes there were any code violations or threat to the safety and welfare of the apartment building occupants. Doc. No. 195-3, Exhibits 5 and 6; *see also* Doc. No. 225. Plaintiff

cites an affidavit from his asserted expert, Flores, to support the contention. Doc. No. 195-3, Exhibit 5 and Doc. No. 225-2, Exhibit 2. The record is clear, however, that Flores did not inspect the property after the fire, and, in fact, has not visited the property since 2016. Doc. No. 194-5 at 56 and 103:3-9. Flores's affidavits (Docs. 195-3; 225-2) are devoted largely to reciting what Hurd and Strickland allegedly told him in conversations on June 21, 2018 and thereafter, when Flores was acting on Plaintiff's behalf, and is peppered with judgments about the credibility of Hurd and Strickland ("I realized that I had caught him in a lie: therefore, he felt the necessity to back-track his words"), their motives ("As a former inspector, I knew that the words and actions of the Code Inspector were 'highly suspect and alarming' because I had experienced similar Extortion and Corruption schemes previously"), and legal issues ("This claim that 'no controversy exists' is not only outrageous but knowingly false and absurd as Defense Counsel, Mr. Love, knows without question that Plaintiff and Plaintiff's Expert do NOT agree with nearly ALL of the 'facts' presented!"). Nothing in these affidavits refutes the City's assertion that Hurd had an objective basis for perceiving a threat of harm. As the code official, Hurd possessed authority to determine if there was imminent danger and to take such action as he deemed appropriate. Doc. No. 194-2 and IPMC § 109.2 (2006). Plaintiff does not dispute Hurd's authority to make such decisions. *See* Doc. No. 195-1. The court concludes it is undisputed that Hurd acted in accordance with the City's ordinances, that Hurd's summary administrative action fell within the emergency exception of *Hodel*, and that the City did not violate Plaintiff's due process rights by failing to provide him a pre-deprivation hearing. *See Spracklin v. City of Blackwell*, No. CIV-07-0023-F, 2007 WL 3357154, at *3 (W.D. Okla. Nov. 7, 2007), aff'd, 293 F. App'x 567 (10th Cir. 2008) ("When the stated ground for termination is the possibility of major fire code violations, the court rejects plaintiffs' contention that procedural due process necessarily requires a hearing or an opportunity

for plaintiffs to dispute the reasons given for the termination of service before electrical services may be terminated."); *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) ("The process one is due is not dependent on whether the government was right or wrong in the particular case but on whether, in general, constitutional norms require particular procedures to balance private and public interests."). As the Supreme Court explained in *Hodel*:

> Discretion of any official action may be abused. Yet it is not a requirement of due process that there be a judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination.

*Hodel*, 452 U.S. at 303 (quoting *Ewing v. Mytinger & Casselberry, Inc.*, 399 U.S. 594, 599 (1950)). In sum, the fact that Plaintiff was not afforded a hearing prior to removal of the electric meter and of the tenants from the apartment building did not violate his right to due process of law.

The uncontroverted facts also show that Plaintiff was provided with notice and an opportunity for a meaningful hearing after Hurd made his determination. "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *M.A.K. Inv. Grp.*, 897 F.3d at 1312 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The uncontroverted facts show that Plaintiff was given immediate notice of the City's action and was given an opportunity for a hearing to present his objections. Plaintiff was indisputably aware of Hurd's order for removal of the electric meter, removal of the occupants from the building, and of his determination that the condition of the building posed a hazard to its occupants. The uncontroverted facts show Plaintiff met with Hurd and Strickland almost immediately after Hurd's decision and was orally informed of the City's position with respect to remedying the deficiencies claimed by Hurd and Strickland. Plaintiff immediately engaged Flores, an asserted expert in electrical and code matters, to communicate with Hurd and Strickland about

the alleged deficiencies. The parties then apparently engaged in a back-and-forth discussion about the need for repairs. To be sure, Plaintiff and Flores did not agree with the City's position and strenuously contended it was erroneous. But the record shows Plaintiff was given reasonably prompt notice of the City's position with respect to the alleged electrical deficiencies.

The record further shows Plaintiff was given an opportunity for a meaningful hearing following the alleged deprivation. As an initial matter, Plaintiff was clearly given the opportunity for direct input with Hurd and Strickland – on an ongoing basis – to voice Plaintiff's objections to Hurd's decision and to try and persuade him the decision was erroneous. *Cf. Spracklin*, 293 F. App'x at 570 ("The opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances.") (*quoting Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n. 17 (1978)).

Plaintiff argues the City did not comply with its ordinances on giving written notice and informing affected persons of the right to request review by the Appeals Board. But a deviation from ordinance requirements is not necessarily a violation of the right to due process of law. *See Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) ("Although the City failed to fully comply with its own Ordinance, such a failure 'does not … automatically translate into a deprivation of procedural due process under the United States Constitution.'") The record shows Plaintiff was notified of Hurd's determination and was given an immediate and ongoing opportunity with Hurd and Strickland to voice his objections to it. Additionally, Plaintiff was given written notice by Hurd about a month after the fire and was specifically informed of the right to seek review of Hurd's determination around 90 days after the fire. Plaintiff was granted a hearing before the Appeals Board to review Hurd's decision as soon as Plaintiff requested a hearing. The Appeals Board allowed Plaintiff and Flores to participate in the hearing, heard Plaintiff's

objections, and modified Hurd's decision, setting conditions under which Plaintiff could regain electrical service to the building. Plaintiff still has not met those conditions. All the while, the City's publicly available ordinances and incorporated codes provided that a person affected by an emergency order "shall thereafter, upon petition directed to the appeals board, be afforded a hearing as described in this code." IPMC § 109.6 (2006). Although in *Memphis Light* the Supreme Court held that due process required a public utility to provide notice of its internal administrative procedure for challenging billing disputes before electrical service could be terminated for non-payment, that was true because a customer could not reasonably be expected to educate himself to protect his interests because the administrative procedures "were not described in any publicly available document." *City of W. Covina v. Perkins*, 525 U.S. 234, 242 (1999) (citing *Memphis Light*, 436 U.S. at 13-15). Thus, "[w]hile *Memphis Light* demonstrates that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, it does not support a general rule that notice of remedies and procedures is required." *City of W. Covina*, 525 U.S. at 242. By contrast, the record here shows the relevant procedures were publicly available such that Plaintiff was on notice of the procedures and could have invoked them at any time, and that the City in fact granted a hearing when he requested one. The City provided Plaintiff with notice and an opportunity for a meaningful hearing; due process did not require more. The City is therefore entitled to summary judgment on Plaintiff's claim alleging a violation of the right to procedural due process.

### B. Substantive Due Process

Any substantive due process claim must present more than an ordinary tort to be actionable under § 1983. *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999). "The ultimate

standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). To reach that level of conduct, the government action must be deliberate rather than merely negligent. *City of Draper*, 168 F.3d at 1190. A plaintiff must do more than show that the government actor intentionally or recklessly caused injury to plaintiff by abusing or misusing government power. *Moore*, 438 F.3d at 1040.

The City's evidence establishes a fire took place, the electrical wiring was damaged, and City officials had concerns about the safety of the occupants and the building. Doc. Nos. 194-1 - 194-4. The photographs provided by the City evince a significantly burned apartment unit with electrical wiring exposed. Doc. No. 194-3. Plaintiff admitted the photos were accurate depictions of the apartment unit. Doc. No. 194-5 at 37:19-38:12. Mr. Lane, the City's expert, declared the electrical cables were heat damaged. Doc. 194-3. According to the City's expert, the electrical cables ran the entire length of the apartment building and discontinuing the service to one apartment would not necessarily eliminate the safety hazards. *Id.* Hurd testified it was his understanding that the electrical service needed to be discontinued to the entire building. Doc. No. 195-2, Exhibit 4.

Plaintiff disputes the City's version of the facts. *See* Doc. Nos. 195 and 225. For example, Plaintiff contends the City changed its reason for discontinuing electrical service to his property and argues the City was being disingenuous. *See* Doc. No. 195-3, Exhibit 6 at ¶ 3 (sparking/arcing was reason given for removing meter but this has never been documented in writing). Plaintiff disputes that the apartment building was unsafe. *See* Doc. No. 195-3, Exhibit 5 at ¶¶ 17-23; Doc. No. 225-2, Exhibit 2 at ¶ 5. However, in light of the evidence presented, the discontinuation of Plaintiff's electrical service in order to ensure that the building was safe from the risk of an

electrical fire does not shock the conscience of the court. *Cf. Rochin v. California*, 342 U.S. 165, 165 (1952) (involuntary stomach pumping shocked the conscience); *Ingraham v. Wright*, 430 U.S. 651 (1977) (paddling a student shocked the conscience); *Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional destruction of inmate's property shocked the conscience). Despite the parties' difference of opinion on the state of the apartment building after the fire, Plaintiff does not have a viable substantive due process claim. The City is entitled to summary judgment on this claim as well. Accordingly, the City's motion for summary judgment (Doc. 194) is GRANTED; Plaintiff's motion for summary judgment (Doc. 195) is DENIED.

### C. Remaining Motions

The parties' motions in limine (Docs. 185, 188, 189) are DENIED AS MOOT in light of the above rulings. Plaintiff's motions to amend the expert report (Docs. 184, 196) are DENIED AS MOOT. The City's motion to strike (Doc. 228) is DENIED AS MOOT. The City's *Daubert* motion (Doc. 190) is DENIED AS MOOT. Plaintiff's motion for relief from judgment (Doc. 241) is DENIED on the merits. The latter motion, which appears to assert grounds arising under subsections (1), (2), (3), and (6) of Fed. R. Civ. P. 60(b), fails to show any basis for relief under that rule. The motion makes no credible showing of mistake or excusable neglect, no showing of newly available evidence that would justify granting relief from the orders previously entered, makes unsubstantiated allegations of fraud and criminal wrongdoing, and fails to present other circumstances that would justify the relief requested.

### IV. Conclusion

The City's motion for summary judgment (Doc. 194) is GRANTED; Plaintiff's motion for summary judgment (Doc. 195) is DENIED. The parties' motions in limine (Docs. 185, 188, 189),

the City's motions to strike (Doc. 228), and the City's *Daubert* motion (Doc. 190) are DENIED AS MOOT.  Plaintiff's motion for relief from judgment (Doc. 241) is DENIED on the merits.

In view of this disposition of all remaining claims, the Clerk of the Court is directed to enter judgment of dismissal in favor of the City and the other Defendants, with Plaintiff to take nothing on his claims.  IT IS SO ORDERED this 2nd day of June, 2022.

                                          s/ John W. Broomes
                                          JOHN W. BROOMES
                                          UNITED STATES DISTRICT JUDGE